IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. A. No. 09-33 GMS |
| ) | |
| ALLAN P. CLARK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

**I.   INTRODUCTION**

On March 24, 2009, the Grand Jury for the District of Delaware indicted Allan P. Clark ("Clark") on nine counts of production or attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On June 23, 2009, the Grand Jury issued a superseding indictment, which contains the same counts as the original indictment. On April 7, 2010, the court commenced a 2-day jury trial. On April 8, 2010, the jury returned a guilty verdict on all counts. On May 7, 2010, Clark filed a motion for acquittal and for a new trial (D.I. 55). For the reasons that follow, the court will deny the motion.

**II.   BACKGROUND**

The relevant background is the evidence presented at trial concerning Clark's alleged production/attempted production of child pornography and possession of child pornography. On January 21, 2009, the Delaware State Police (the "DSP") received a telephone call from the wellness center of a Sussex county school concerning a report of sexual exploitation involving a 14-year-old female student, Jane Doe. (Transcript of April 7, 2010 and April 8, 2010 trial ("Tr.") at 116-20, 133-

37, 146.) Detective Kelly Wells[1] ("Wells") responded to the call and directed Jane Doe to report with a parent to Troop 4 in Georgetown, Delaware, for an interview. (Id. at 117-18.) Jane Doe and her biological father arrived at Troop 4, where Wells interviewed Jane Doe for approximately 20-30 minutes. (Id. at 118, 135.) Wells' interview began around 4:00 p.m. (Id. at 118.)

Jane Doe reported to Wells that, approximately one week earlier, she was showering in the bathroom of the residence she shared with Clark, her mother and brother, when she noticed Clark's cell phone sitting on the ledge of the bathtub. (Id. at 119.) Jane Doe stated that Clark came into the bathroom while she was still in the shower and removed the cell phone.[2] (Id.) Jane Doe further reported that Clark took the cell phone with him to work and that he was due to arrive home shortly. (Id.)

After concluding the interview, Wells and another DSP detective drove to Clark's residence to wait for him to arrive. (Id. at 119-20.) The detectives followed Clark into his driveway, got out of their car, identified themselves, and took the cell phone from Clark without incident. (Id. at 120.) Upon returning to Troop 4, Wells showed the cell phone to Jane Doe, who identified it as the phone she had seen on the ledge of the bathtub. (Id. at 136-37.)

---

[1] Wells has been a DSP detective for 12 years, and has been a DSP officer for the past 16 years. (Tr. at 116.) She was assigned to the Major Crimes Unit of Troop 4, in Georgetown, Delaware, during all relevant times. (Id.)

[2] Jane Doe testified that she "got up around 6:30," went into the bathroom and got into the shower on the day that she discovered Clark's cell phone recording her in the shower. (Tr. at 135-36.) While she was in the shower, Clark came into the bathroom and Jane Doe "saw him messing around at the end of the bathtub." (Id.) After Clark moved, Jane Doe "saw that he had placed his phone on the ledge of the tub . . . [and she saw her] image on the screen of the cell phone. (Id. at 136.) She "moved out of the way to try to get out of the image." (Id.) She further testified that she reported this incident to Mrs. Truitt, at her school's wellness center, on January 21, 2009. (Id. at 146.)

Wells next secured a search warrant for both the cell phone and Clark's residence. (Id. at 121-22, 132.) Wells then viewed the contents of the cell phone. (Id. at 121-22.) She found and viewed nine video files that were created on the cell phone between November 18, 2008 and January 14, 2009. (Id. at 122.) The court admitted each of the video files at trial and published them to the jury. (Id. at 123-31; Gov't Exs. 2-10.)

DSP Detective Daniel Willey ("Willey") testified as an expert regarding his forensic examination of the cell phone and these video files. (Tr. at 156-63.) Specifically, Willey testified as to the date and time that each video file was created on the cell phone. (Id. at 160-62.) The videos were created on the following dates and times:

| Exhibit 2  | November 18, 2008 | 6:08 a.m. |
| Exhibit 3  | December 10, 2008 | 6:04 a.m. |
| Exhibit 4  | December 11, 2008 | 6:17 a.m. |
| Exhibit 5  | December 16, 2008 | 6:08 a.m. |
| Exhibit 6  | January 8, 2009   | 6:13 a.m. |
| Exhibit 7  | January 9, 2009   | 6:23 a.m. |
| Exhibit 8  | January 13, 2009  | 6:07 a.m. |
| Exhibit 9  | January 14, 2009  | 6:18 a.m. |
| Exhibit 10 | January 14, 2009  | 6:28 a.m. |

Gov't Exs. 2-10, 15, 35; Tr. at 162-63.

At the beginning of the first eight videos, Clark is seen hiding the cell phone at about waist level in the bathroom just before Jane Doe enters. (See Gov't Exs. 2-9.) The camera then records Jane Doe as she enters the bathroom, undresses and then, while naked, uses the toilet, sink and mirror, moves about the room and steps into the shower. (See id.) The camera records video from various angles and distances of Jane Doe's naked body, including her genitals, pubic area and buttocks, as she moves around the room. (See id.) In the videos, Jane Doe's pubic area and genitals appear to be only inches from the camera at certain points in the recordings. (See id.) In the first

3

eight videos, Clark is recorded removing the cell phone after Jane Doe enters the shower. (See id.)

In the last video, Clark is heard speaking to Jane Doe while the video is recording. (See Gov't Ex. 10.) This is the video that was recorded while the cell phone was placed on the ledge of the bathtub. (See id.) The first portion of the video captures the white shower curtain. (See id.) As the curtain moves, however, Jane Doe's nude body becomes momentarily visible. (See id.)

Jane Doe testified at trial that she was 14-years-old when Clark took the videos. (Id. at 136.) Jane Doe further testified that she viewed each of the nine videos with Wells in January 2010. (Id. at 137-38.) She also confirmed that the videos were recorded in the only bathroom of the residence, and that she and Clark appear in the videos. (Id. at 138.)

Jane Doe then described the weekday morning routine at her house. (Id. at 139-40.) She explained that she would get up to get ready for school after Clark "had just gotten out of the shower," at approximately 6:15, 6:30. (Id. at 139.) After entering the bathroom, she would close the door, which "didn't really lock that well." (Id. at 139.) When asked why the screen went black in some of the videos, Jane Doe responded that she had been turning out the lights after entering the shower for the last couple of months, because she "knew that [Clark] would come in and [she] figured that if the lights were off then he couldn't really see anything." (Id.)

Clark testified on his own behalf and stated that the cell phone belonged to him, and that he had recorded the videos between November 18, 2008 and January 14, 2009. (Tr. at 230, 232.) According to Clark, he recorded the videos as a practical joke and he was trying to catch Jane Doe "doing something goofy or doing something funny." (Id. at 230, 232-33.) When asked how he set up the cell phone, Clark testified:

4

>I turned it on, pressed the record button, and set it up underneath the shelf, the only place that it was basically hidden from view in a small bathroom.

(Tr. at 231.) Although he did not share the videos with anybody, Clark was "sure [he] had scanned them on [his] way to work." (Id.) Clark also did not delete the videos. (Id. at 235.)

In addition to Clark's cell phone, DSP officers seized a computer from his residence on January 22, 2009. (Id. at 131-33; Gov't Ex. 11.) Willey testified as an expert about the computer forensic examination he conducted of the computer's hard drive. (Id. at 164-85.) Specifically, Willey reviewed the web browsing history under the user account "Allan." (Id.) Referring to a portion of his computer forensic report, Willey testified that the "Allan" account was used to browse a number of "[s]exually suggestive" websites "containing images of females who appear to be possibly under the age of 18," or "at the very least, they were meant to appear under the age of 18." (Id. at 175; Gov't Ex. 17.) Examples of some of the website names included "tinytabby.com," "katyoung.com," and "daddyiamnude.com." (Tr. at 173-74; Gov't Ex. 17.) The user "Allan" last visited these websites between November 30, 2008 and January 10, 2009. (Tr. at 165-66; Gov't Ex. 17.)

Willey highlighted Allan's web browsing history between 11:58 p.m. on January 8, 2009, and 5:02 a.m. on January 9, 2009. (Tr. at 176-77.) During that period of time, Allan had "last visited" websites including "fm-teens.com," "dirtydaughter.com," and "stiffgirls.com." (Id. at 175-78; Gov't Ex. 17.) Approximately, one hour and twenty-one minutes after his last visit to "dirtydaughter.com," on January 9, 2009, Clark surreptitiously recorded Jane Doe as she entered the bathroom, undressed, and entered the shower. (Tr. at 178; Gov't Exs. 7, 17.)

Willey also testified that he found graphics associated with some of the websites in the "temporary internet files" of the hard drive. (Tr. at 178-79.) More particularly, Willey showed the jury graphics from the website "little summer," which contained a picture of a female who appears to be wearing braces on her teeth next to text that read: "I'm young, horny, sexy and all yours." (Gov't Ex. 18; Tr. at 180-81.) Willey also showed the jury a graphic from the "tinytabby" website that had a picture of a female next to the text that read: "You can stop looking for the perfect little teen. I'm the one you've been dreaming of." (Gov't Ex. 18; Tr. at 181-82.) Finally, Willey showed a graphic from "katyoung," which contained the text "Hi guys, welcome to my site. My name is Kat and I have never been on camera until now. I'm a bit nervous about all this but I'm five foot nothing and I want to show you everything." (Gov't Ex. 18; Tr. at 184.)

## III.   STANDARD OF REVIEW

A motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure may only be granted where the evidence is insufficient to sustain a conviction. *United States v. Gonzales*, 918 F.2d 1129, 1132 (3d Cir. 1990). The court must determine whether the government has adduced "substantial evidence to support" a guilty verdict. *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). In ruling on such a motion, a court may not weigh the evidence, nor may it make credibility determinations which are within the domain of the jury. Rather, the court must consider the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the government. *United States v. Wasserson*, 418 F.3d 225, 237 (3d Cir. 2005). Viewing the evidence in its entirety, a judgment of acquittal is warranted only if "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

## IV. DISCUSSION

On each of the first nine counts of the Indictment, the jury found Clark guilty of "a violation of 18 U.S.C. § 2251(a) and (e), which prohibits a person from producing or attempting to produce child pornography." (D.I. 53 at 1-3.) On count 10 of the Indictment, jury found Clark guilty of "possessing child pornography," in violation of 18 U.S.C. § 2252A(a)(5)(B). (Id. at 3.)

In order to show that Clark produced child pornography, the government must establish that he "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d] any minor to engage in . . . any sexually explicit conduct for the purpose of producing a visual depiction of such conduct. . . ." 18 U.S.C. § 2251(a). The government also must demonstrate that either the visual depiction itself, or the materials used to produce it, had traveled in interstate or foreign commerce. *See id.*

In order to show that Clark attempted to produce child pornography, the government must establish that he acted with the specific intent to commit the completed offense and took a substantial step toward doing so.[3] *See, e.g., United States v. Earp*, 84 Fed. Appx. 228, 233 (3d Cir. 2004); *United States v. Lee*, --- F.3d ---, 2010 WL 1508192, at *12 (11th Cir. Apr. 16, 2010).

In order to show that Clark possessed child pornography, the government must establish that he knowingly possessed one or more matters, such as a digital storage device, that contained, and

---

[3] The Third Circuit follows the Model Penal Code in determining what the government is required to prove for a crime of attempt. Thus:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

*United States v. Cruz-Jiminez*, 977 F.2d 95, 102 (3d Cir. 1992).

he knew it contained, at least one visual depiction of child pornography. *See* 18 U.S.C § 2252A(a)(5)(B); *United States v. Miller*, 527 F.3d 54, 63-64 (3d Cir. 2008). The government also must show that the visual depiction involved, and Clark knew it involved, the use of a minor engaged in "sexually explicit conduct," and that either the visual depiction or the matter containing it had moved in interstate or foreign commerce. 18 U.S.C § 2252A(a)(5)(B). Clark challenges the jury's verdict only insofar as it was based on the conclusion that the videos at issue depicted Jane Doe engaged in "sexually explicit conduct." Thus, the court addresses only this issue.

Section 2251(a) was enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977 (the "Act"). The Act contains definitions of terms contained in section 2251(a) and defines "sexually explicit conduct" as including, among other things, "the lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(A)(v). The Act, however, does not define "lascivious exhibition of the genitals or pubic area." In determining the meaning of the phrase "lascivious exhibition," the United States Court of Appeals for the Third Circuit has explained that the phrase "means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Knox*, 32 F.3d 733, 745-46 (3d Cir. 1994). In other words, the Third Circuit has concluded that lasciviousness is characterized by the intent of the photographer to produce an image that will elicit a sexual response in his intended audience. *Id.* at 747 ("'lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles'") (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244-45 (9th Cir. 1987)).

To decide whether material depicts a "lascivious exhibition of the genitals," the Third Circuit has adopted the six-part, non-exclusive test set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). *Knox*, 32 F.3d at 745-46 & n.10; *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989). Accordingly, the court considers the following factors in light of the evidence adduced at trial:

1. Whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2. whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3. whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4. whether the child is fully or partially clothed, or nude;

5. whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

6. whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Dost*, 636 F. Supp. at 832. The "analysis is qualitative and no single factor is dispositive." *Knox*, 32 F.3d at 746 n.10. In addition, "'a visual depiction need not involve all of these factors to be a lascivious exhibition of the genitals or pubic area. The determination will have to be made based on the overall content of the visual depiction . . . ." *Villard*, 885 F.2d at 122 (quoting *Dost*, 636 F. Supp. at 832.)

After having reviewed Exhibits 2-9 in the light most favorable to the government, the court concludes that a reasonable jury could have found that they constitute a lascivious exhibition of the genitals or pubic area. With respect to the first *Dost* factor, the court finds that a reasonable jury

9

could have found that the focal point of each depiction in Exhibits 2-9 is Jane Doe's genital and pubic area. As Jane Doe moves about the bathroom preparing for a shower, most of the video captures the areas of her body that would be covered by underwear and a bra from distances of a few inches to a few feet away. The court also finds that the jury could have reasonably inferred that Clark positioned his cell phone in a manner designed to capture visual images of Jane Doe's genital or pubic areas. Specifically, Clark hid the camera at waist level, pointing toward the shower, which resulted in a focus on the genital areas of the nude body. Thus, the evidence establishes that the jury could have reasonably found that the first *Dost* factor is present.

With respect to the second factor, a bathroom is not necessarily sexually suggestive. However, as the government points out, the bathroom is perhaps the most common room in which a person exposes his or her genitals and pubic area. Moreover, given the placement of Clark's phone – immediately opposite the shower at a level and angle aimed at the genital and pubic areas – a jury could reasonably conclude that the second *Dost* factor is present. *Cf. United States v. Helton*, 302 Fed. Appx. 842 (10th Cir. 2008) (concluding that a hidden video recording of a child using the toilet, with a focus on her clothed pubic area, was lascivious).

With respect to the third and fourth *Dost* factors, each of the first eight videos surreptitiously records Jane Doe's genitals and pubic area while she disrobes to the point of full nudity. Put differently, Jane Doe disrobed in the bathroom unaware that Clark was taping her naked body. Accordingly, while not in an unnatural pose, the jury could have reasonably concluded that the hidden camera recordings of Jane Doe's naked body weighed in favor of lasciviousness.[4]

---

[4] Clark contends that the third and fourth *Dost* factors are not present because "[i]t would be unnatural to be showering with clothes on!" (D.I. 58, at 3.) This argument clearly misses the mark, though, as it appears to ignore the fact that Clark hid the camera to surreptitiously tape

With respect to the fifth *Dost* factor, the court finds that it does not apply in the present case, because Jane Doe did not know she was being filmed.

With respect to the sixth *Dost* factor, considering the content of Exhibits 2-9, the court concludes that a reasonable jury could have found that the visual depiction in each exhibit was "intended or designed to elicit a sexual response in the viewer," as it was planned and set up for an audience consisting of Clark and like-minded individuals. *Knox*, 32 F.3d at 747. As previously discussed, the jury could have considered that eight of the videos show that, on separate occasions over a two-month period, Clark surreptitiously videotaped a 14-year-old girl undressing in the bathroom. The jury also could have considered Clark's actions in placing the camera just below waist level and adjusting the camera angle in some of the videos just before Jane Doe enters the bathroom. The jury further could have considered Clark's own testimony about his production of the videos, including: (1) the fact that he hid the camera; (2) the fact that he viewed the videos on his way to work; and (3) the fact that he chose to save them rather than delete them. Finally, the jury could have considered Willey's testimony regarding the "Allan" account on Clark's home computer that was used, between November 30, 2008 and January 10, 2009, to browse a number of sexually suggestive websites containing images of females who appear, or are meant to appear, to be under the age of eighteen. Therefore, based on the content of the videos and the circumstances surrounding Clark's repeated, surreptitious production of them, the jury reasonably could have concluded that Clark intended to elicit a sexual response in his audience, i.e., himself. As such, the court concludes that the sixth *Dost* factor is present.

---

Jane Doe disrobing, and positioned it in a way to capture images of her genitals and pubic area.

Given the presence of most of the *Dost* factors, the court concludes that a reasonable jury could have found that the depictions shown in Exhibits 2-9 constitute a lascivious exhibition of the genital or pubic area within the meaning of 18 U.S.C. § 2251(a).[5] Accordingly, the court will deny Clark's motion for acquittal.[6]

Dated: August 30, 2010

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The final video does not depict Jane Doe's genitals or pubic area. (See Gov't Ex. 10.) Thus, the jury must have based its guilty verdict on count nine on an attempted production of child pornography theory. Given the court's ruling with respect to Clark's actual production of child pornography, the court further concludes that the jury's finding of attempted production was fully supported by the evidence

[6] In the alternative, Clark has requested a new trial "since the jury verdict was against the weight of the evidence." (D.I. 58 at 5.) Because the court has concluded that the jury verdict was not against the weight of the evidence, it will also deny Clark's motion for a new trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. A. No. 09-33 GMS |
| | ) | |
| ALLAN P. CLARK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion for Judgment of Acquittal and for a New Trial (D.I. 55) is DENIED.

Dated: August 30, 2010

_____
CHIEF, UNITED STATES DISTRICT JUDGE