IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLAN P. CLARK, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 13-765-GMS |
| | ) | Cr. A. No. 09-33-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

## MEMORANDUM OPINION

---

Allan P. Clark. *Pro se* movant.

Edmond Falgowski. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

---

March 10 , 2016
Wilmington, Delaware

SLEET, United States District Judge

## I.   INTRODUCTION

Movant Allan P. Clark ("Clark") filed a *pro se* motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255.  (D.I. 79)  The government filed an answer in opposition,

and Clark filed a reply.  (D.I. 85; D.I. 87)  For the reasons discussed, the court will deny Clark's

§ 2255 motion without holding an evidentiary hearing.

## II.   BACKGROUND

As summarized by the Court of Appeals for the Third Circuit, the facts leading to Clark's

arrest and conviction are as follows:

> On nine separate occasions over two months, Clark activated the "record"
> function of his cell phone, placed the phone in his house's bathroom, and created videos
> of his 14-year-old step-daughter ("Jane Doe"). At the beginning of the first eight videos,
> Clark is visible alone in the bathroom, placing the phone at about waist level. The videos
> then show Jane Doe entering the bathroom, undressing, and, while naked, using the sink,
> mirror, and sometimes the toilet, and then stepping into the shower. Her genitals, pubic
> area, and buttocks are visible, often appearing to be only inches from the camera. Doe
> does not acknowledge the presence of the phone. At the end of the first eight videos,
> Clark re-enters the bathroom and removes the phone while Doe is still in the shower.
>
> In the ninth video, Clark is heard talking to Doe while the video is recording. The
> phone appears to be placed on the ledge of the tub. The first portion of the video shows a
> white shower curtain. The curtain moves and Doe's naked body is visible before she is
> seen moving away from the camera.
>
> At trial, Clark testified that he scanned the videos after recording them, did not delete
> them after viewing them, and did not transfer them to anyone else. When asked why he
> made the videos, he stated that "[it] was intended to be a joke, . . . just a private joke
> between my stepdaughter and I," and that he wanted to capture "a candid camera type
> moment. Something that could be shared as a funny thing later. . . . Not for anybody else.
> Just between the two of us . . . ." At trial, Doe testified that she saw the videos for the first
> and only time when she watched them at the offices of the Delaware State Police
> ("DSP").

*United States v. Clark*, 468 F. App'x 102, 103 (3d Cir. 2011).

In March 2009, Clark was indicted on nine counts of production or attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (D.I. 1; D.I. 2) Defense counsel filed a motion to suppress and a motion to suppress/dismiss indictment on May 18, 2009. (D.I. 13; D.I. 14) On June 23, 2009, a superseding indictment was returned, which corrected a typographical error, but everything else was the identical to the original indictment. (D.I. 19)

In July 2009, the Government initiated plea discussions with the defense, and transmitted a written plea offer and proposed memorandum of plea agreement to defense counsel on August 6, 2009. (D.I. 85 at 4) According to the plea agreement, Clark would agree to plead guilty to a criminal information charging him with transportation of child pornography, which carried a mandatory minimum sentence of five years and a maximum sentence of twenty years. (D.I. 79-1 at 48-51) The plea agreement also stated that the government would move for a third point for acceptance of responsibility. *Id.* The plea offer remained open until the close of business on August 13, 2009. (D.I. 79-1 at 47) Defense counsel orally informed the government that he had presented the offer to Clark, who rejected it. (D.I. 85 at 6)

On November 24, 2009, the court denied Clark's motion to suppress (D.I. 34) and subsequently scheduled a status conference to address Clark's motion to dismiss the indictment. On December 10, 2009, during the status conference, the parties presented argument on Clark's motion to dismiss the indictment. At the conclusion of the hearing, the court denied Clark's motion to dismiss the indictment and declined defense counsel's request for a bench trial.

Also on December 10, 2009, the Government provided defense counsel with a renewed and revised plea offer letter and proposed memorandum of plea agreement. (D.I. 85-1 at 42-48)

2

As in the prior plea offer, Clark would agree to plead guilty to a criminal information charging

him with transportation of child pornography, which carried a mandatory minimum sentence of

five years and a maximum sentence of twenty years. The only difference between the second

plea offer and the first plea offer was that the government would not mover for a third

acceptance of responsibility point. *Id.* The plea offer remained open until December 23, 2009.

*Id.* at 43.

The court held a telephone status conference on December 18, 2009, during which

defense counsel stated that Clark had rejected the government's second plea offer and requested

that the case be scheduled for trial. Thereafter, the government filed a motion *in limine* to

exclude evidence regarding Jane Doe's alleged knowledge of and consent to Clark's videotaping

her, namely, Clark's initial statement to the police that the videos were Jane Doe's idea and that

she knew about everything on the camera. (D.I. 40 at 2) After hearing argument, the court orally

granted the motion.

The case proceeded to trial by jury on April 7 and 8, 2010. On April 8, 2010, the jury

convicted Clark of all ten counts in the indictment. (D.I. 53) Clark filed a Rule 29 motion for

judgment NOV, arguing that the evidence was insufficient to support the jury's guilty verdicts

for production and possession of child pornography. (D.I. 58) The court denied that motion on

August 30, 2010. (D.I. 63)

After conducting the pre-sentence investigation, a probation officer concluded that Clark

should not receive a reduction in his advisory Guidelines level for acceptance of responsibility,

because Clark denied that any aspect of his behavior was criminal. PSR, ¶¶ 28-31. Defense

counsel objected to the PSR's recommendation to deny a reduction for acceptance of

3

responsibility, PSR at 19, but the court overruled the objection. (D.I. 74 at 15-16) The court

sentenced Clark to a mandatory minimum term of 180 months of imprisonment. (D.I. 68; D.I.

74 at 50)

Thereafter, defense counsel withdrew, and the court appointed the Federal Public

Defender's Office to represent Clark on direct appeal. (D.I. 69; D.I. 71) The Court of Appeals

for the Third Circuit affirmed Clark's conviction and sentence. *See Clark*, 468 F. App'x at 104.

## III.    DISCUSSION

Clark asserts two claims in his § 2255 motion: (1) defense counsel provided ineffective

assistance by advising him to reject the government's plea offers and proceed to trial; and (2)

defense counsel provided ineffective assistance at sentencing by failing to investigate and

introduce evidence of his diminished mental capacity to mitigate sentencing.

Clark has properly raised his ineffective assistance of counsel allegations in a

§ 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule,

ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard

established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance")

prong of the *Strickland* standard, Clark must demonstrate that "counsel's representation fell

below an objective standard of reasonableness," with reasonableness being judged under

professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at

688. Under the second ("prejudice") prong of the *Strickland* standard, Clark must demonstrate a

reasonable probability that, but for counsel's error, the outcome of the proceeding would have

been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Finally,

although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong

4

presumption that counsel's representation was professionally reasonable. *Strickland,* 466 U.S. at 689.

## A. Claim One

In claim one, Clark contends that defense counsel incorrectly advised him that he would be acquitted at trial, and insisted that he reject the government's two plea offers in order to proceed to trial on a "ludicrous and meritless legal theory." Citing *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), Clark asserts that the court should vacate his conviction and sentence and order the government to re-offer him the plea deal he twice rejected.

In *Lafler*, the Supreme Court explicitly held that the *Strickland* standard applies in the context of a rejected plea offer, explaining that a defendant who rejects a favorable plea offer because of incorrect legal advice may maintain a claim for ineffective assistance of counsel under *Strickland* if he is subjected to a less favorable outcome in further trial proceedings. *Lafler*, 132 S.Ct. at 1384-91. In order to establish *Strickland* prejudice in the context of a rejected plea offer, a defendant must show that,

> but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (*i.e.* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); that the court would have accepted its terms; and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence ultimately imposed.

*Lafler*, 132 S.Ct. at 1385.

As an initial matter, the Clark has not demonstrated that defense counsel advised him to reject the government's plea offers. Defense counsel's affidavit responding to Clark's § 2255 motion explains that: (1) Clark never stated he wanted to plead guilty and, in fact, he was adamant about going to trial; (2) defense counsel informed Clark about the consequences of

rejecting the generous plea offers; (3) defense counsel explained the nature, strength and risk of rejecting the government's plea and proceeding to trial; (4) defense counsel had Clark's family members attempt to intercede and encourage him to enter plea because the evidence against him was so detrimental and he had no meaningful defense; and (5) Clark's entire § 2255 motion is "pure fiction" because Clark's trial decisions were his own and he went against everyone who tried to persuade him to take the plea. (D.I. 85-2 at 18-19)

Defense counsel has provided letters from himself to Clark and from Clark's sister to defense counsel to corroborate the statements in his affidavit. In his letter to Clark, defense counsel wrote that Clark's "decision to reject the Government's plea offer of a 5 year minimum-mandatory to 20 years is quite a gamble." (D.I. 85-2 at 21) Defense counsel also wrote, "Your Marine Corp motto – Semper Fi – is being tested to the fullest and you are betting at least 10 years minimum-mandatory on it." *Id.* In a similar vein, Clark's sister stated in a post-conviction letter to defense counsel that, "Oh how I wish we would have been able to convince him to take the pleas." (D.I. 82-2 at 31) Clark's sister also wrote that she questioned their "decision to not allow him to be represented by a public defender," because "wouldn't we be stuck with the same result and [wouldn't we have] saved you the time and frustration of working with my brother." (D.I. 85-2 at 31) This statement suggests that her brother was not the easiest of clients to work with.

Clark has filed affidavits from his mother and sister to support his contention that defense counsel advised him to reject the plea offers. However, these affidavits do not rebut defense counsel's assertion that he advised Clark about the plea offers and the consequences of pleading guilty. Notably, Clark's mother does not deny that defense counsel asked her to try to convince

6

Clark to accept the plea offer. Rather, she contends that counsel's request "was not timely."
(D.I. 87 at 9) Moreover, Clark's mother's statement that defense counsel told her that he would
never allow this case to go to a jury trial or that a jury trial was not an option indicates counsel's
strong feeling against proceeding to trial and actually supports defense counsel's assertion that
he encouraged Clark to take the plea because the evidence was so detrimental that he had no
meaningful defense. In turn, Clark's sister does not deny that she attempted to convince Clark to
accept the plea offer. Rather, she contends that defense counsel did not request that she ask
Clark to accept the plea. (D.I. 87 at 10-11)

Additionally, Clark's memorandum contains numerous inconsistent and untrue
statements. For instance, according to Clark, "he insisted [that] counsel gain a negotiated plea
agreement with the government. The plea agreement was obtained." (D.I. 79-1 at 8) However,
the government asserts that "[on] or about July 24, 2009, without solicitation from [Clark], the
government initiated plea discussions with defense counsel." (D.I. 85 at 4) Clark asserts that the
government made three plea offers, one which was "right before trial." (D.I. 79-1 at 8)
However, according to the government, only two plea offers were made. Clark asserts he
"suffers" from "diminished mental capacity," and states that his "military service [] directly
caused [him] to suffer the mental illness that contributed to the causation of [his] commission of
the crime." (D.I. 79-1 at 15) Yet, Clark does not provide anything to support his "diminished
mental capacity" allegation and, in fact, during his pre-sentence interview, he stated that he has
no history of mental health treatment. PSR, ¶ 57. Finally, although he argues that defense
counsel "insisted" that he proceed to trial, Clark also asserts that he "made the decision whether
to plead guilty or proceed to trial" because of counsel's "extreme[] optimis[m]" that he would be

7

acquitted. (D.I. 79-1 at 11)  Interestingly, in his reply, Clark asserts that, "[i]ndeed, a favorable

plea offer was reported to Clark but, on advice of his counsel that the trial outcome **could** be an

acquittal, the plea offer was not considered by Clark as the best choice among the alternative

courses of action open to him as presented by [defense counsel]." (D.I. 87 at 1)(emphasis added)

Based on this record, the court is not persuaded that defense counsel "insisted" that Clark

reject the plea offers because counsel believed Clark would be acquitted at trial.  Rather, the

record demonstrates that Clark was well-aware of the government's plea offers and the risks of

proceeding to trial, and that he rejected the government's plea offers despite defense counsel's

advice to accept them.  Therefore, the court concludes that Clark's contradictory and conclusory

allegations do not satisfy the performance prong of the *Strickland* standard.[1]

However, even if the court were to accept Clark's contention that defense counsel

insisted that Clark reject the plea offers because counsel had faith in obtaining an acquittal,

Clark's inability to admit the illegality of his actions prevents him from demonstrating a

reasonable probability that he would have accepted one of the plea offers but for defense

counsel's alleged insistence and misadvice.  As aptly stated by the United States District Court

for the Western District of Pennsylvania, "[i]n instances where a defendant maintains innocence

at trial and testifies in his or her own defense consistent with such innocence, the court must

reconcile the apparent inconsistencies between the proffered allegations and the earlier

_____

[1]In an attempt to support his argument that defense counsel insisted that he reject the plea offers, Clark contends that defense counsel would not have filed the motion to suppress and the motion to dismiss the indictment (D.I. 13; D.I. 14) if defense counsel had honestly advised Clark about the dangers of rejecting the plea offer.  (D.I. 87 at 5)  However, when defense counsel filed those motions on May 18, 2009, the government had not yet extended its first plea offer to the defense (which was offered on July 24, 2009).  (D.I. 85 at 4)  As such, counsel could not have provided advice about a plea offer that did not yet exist.  Additionally, the fact that defense counsel filed those motions demonstrates that defense counsel was representing Clark in a zealous and thorough manner or, stated another way, providing effective representation.

statements." *United States v. Slane*, 2015 WL 728481, at *21 (W.D. Pa. Feb. 19, 2015). In other words,

> a defendant who has actually testified to a jury that he is innocent faces a formidable barrier to convince the court that he really wanted to plead guilty. [] A defendant who has not told a jury he is innocent has at least a chance of making a credible argument that he wanted to plead guilty.

*Williams v. United States*, 2013 WL 6410015, at *4 (E.D. Mo. Dec. 9, 2013).

In this case, Clark testified at trial that the nine videos he took of his stepdaughter were "intended to be a joke, or a practical joke kind of a -- just a private joke between [us]." (D.I. 60 at 25) He admitted that he recorded the videos through his cell phone that he hid from view in the bathroom, and the he wanted to get a candid of Jane Doe doing something goofy or funny. *Id.* at 26. Clark's testimony demonstrates his belief that he was not guilty of attempting to produce, or possessing, child pornography, because he did not intend to create sexually explicit videos of Jane Doe.

Clark continued to profess his innocence during sentencing. While addressing the Jane Doe, he stated in open court:

> I want you to know that even though there were things in my life that were out of control, I never looked at her, I never looked at you with sexual thoughts in mind, nor would I ever attempt to make you an object of anybody's lust.

(D.I. 74 at 26) On direct appeal, Clark argued that this court erred in precluding him from introducing evidence that Jane Doe came up with the idea of making the videos of her in the bathroom and knew that they were being made. *See* Brief of Appellant and Joint Appendix Volume 1 at 10, *United States v. Clark*, C.A. No. 10-4520 (3d Cir. June 29, 2011). Clark contended that he should have been permitted to introduce such evidence to show that he did not

9

intend to produce child pornography.  The Third Circuit rejected Clark's argument, explaining

that Jane Doe's

> knowledge of or consent to the creation of the videos is immaterial to whether Clark
> intended or designed the videos to elicit a sexual response in the viewer – that is, himself.
> The focus is on the videos, not on what [the victim] knew.

*Clark*, 2011 WL 5865432, at *2.

Even in the instant motion, Clark maintains his stance that he was not guilty of

attempting to produce or possess child pornography.  He explicitly states that "the crime was

truly aberrant behavior for this individual," (D.I. 79-1 at 7), and that "the government did not

present a scintilla of evidence that Clark touched or harmed the minor victim other than his

voyeuristic behavior."  (D.I. 87 at 2)  This latter statement ignores the emotional harm his actions

caused Jane Doe.  Clark also blames his commission of the crime on his "diminished mental

capacity," yet he offers nothing to support his alleged "diminished mental capacity."  (D.I. 79-1

at 14-15)

Having had ample opportunity to observe Clark's demeanor and comportment during the

trial and sentencing, the court views Clark's testimony that the videos were a "joke" as

demonstrating his inability (or unwillingness) to accept the illegality of his actions.  (D.I. 74 at

44)  The probation officer reached the same conclusion after conducting the presentence

interview, stating that, "[a]lthough [Clark] admitted the underlying conduct (i.e., he does not

deny taking the videos), he continues to assert that it was only meant to be 'funny,' and not done

for any illicit purpose."  PSR Addendum at 19.  Thus, after considering the entire record, and

especially Clark's continued inability to admit the criminality of his actions, defense counsel's

sworn affidavit, and the letter from Clark's sister, the court concludes that Clark cannot

10

demonstrate a reasonable probability that he would have accepted the plea offers but for defense

counsel's allegedly deficient advice.[2] *See United States v. Seeley*, 574 F. App'x 75, 80 (3d Cir.

2014).

Accordingly, the court will deny claim one as meritless.

**B. Claim Two**

In claim two, Clark contends that counsel provided ineffective assistance at sentencing by

failing to present evidence of his diminished mental capacity for mitigation purposes. (D.I. 79-1

at 5, 38)  To prevail on this claim, Clark must demonstrate a "reasonable probability that, but for

counsel's errors, the result of the sentencing proceeding would have been different than what

occurred." *United States v. Polk*, 577 F.3d 515, 520 (3d Cir. 2009).  Clark, however, cannot

satisfy this standard.  Since he was sentenced to the mandatory minimum term of fifteen years in

prison, he could not have received a lesser sentence regardless of any additional evidence or

arguments defense counsel could have made during the sentencing hearing.  *See, e.g., United*

---

[2]To the extent the court should construe claim one as also alleging that defense counsel provided
ineffective assistance by failing to present a different defense theory than the one pursued, the
court concludes that the argument is unavailing.  Once Clark decided to reject the plea offer,
defense counsel pursued the best -- and perhaps only -- strategy available by attempting to prove
that the images in question did not depict the "lascivious exhibition of the genitals or pubic area"
required by 18 U.S.C. § 2256(8).  As noted by the government, "[h]ad defense counsel
succeeded in convincing the jury that [the relevant] standard [for determining whether a genital
exhibition is lascivious] was not met beyond a reasonable doubt, the jury would have had to
return a not guilty verdict on the possession of child pornography charge, and could have
convicted [Clark] only of attempted production of child pornography." (D.I. 85 at 21)
Additionally, defense counsel's strategy of attacking the attempted production charge by arguing
that Clark lacked the specific intent to produce pornography 18 U.S.C. § 2251(a) was objectively
reasonable. *See, e.g., United States v. Thies*, 2015 WL 5671377 (D. Kan. Sept. 25, 2015)(the
defense disputed the production of child pornography charge under 18 U.S.C. § 2251(a) by
challenging the specific intent element); *Perkins v. Phelps*, 2012 WL 1835714, at *12 (D. Del.
May 16, 2012)(observing that counsel's decision to use a lack of intent defense as not
constitutionally deficient).

11

*States v. Jamerson*, 536 F. App'x 606, 610 (6th Cir. 2013)(court of appeals noted that, although district court departed downward from sentencing guideline range due to defendant's mental capacity, it was bound to impose the 60 month mandatory minimum under the statue); *Reid v. United States*, 871 F Supp. 2d 324, 339 (D. Del. 2012)(defense counsel's failure to object to the PSR was not ineffective because defendant was sentenced to mandatory minimum). Accordingly, the court will deny claim two as meritless.

## IV.    EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Clark is not entitled to relief under § 2255. Therefore, the court concludes that an evidentiary hearing is not warranted.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

12

The court is denying Clark's § 2255 motion after determining that his ineffective assistance of counsel claims lack merit. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VI.    CONCLUSION

The court concludes that Clark is not entitled to relief pursuant to 28 U.S.C. § 2255.    An appropriate order will issue.

13